UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ANTHONY RAY MONTGOMERY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 12-245-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Anthony Ray Montgomery ("Montgomery" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 12, 13] Montgomery argues that the administrative law judge ("ALJ") assigned to his case erred in his evaluation of the medical source opinions. He seeks reversal of the ALJ's decision and an award of benefits. The Commissioner contends that the ALJ's decision was supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion for summary judgment. The relief sought by Montgomery will be denied.

**I.**

On July 2, 2010, Montgomery applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, and Supplemental Security Income ("SSI")

under Title XVI of the Act. [Tr., pp. 169-73, 174-78] He alleged a disability beginning October 12, 2009. [Tr., p. 169] The applications were denied initially and upon reconsideration. [Tr., pp. 110, 116] Montgomery, along with his attorney Stephen Neal Calvert and vocational expert ("VE") Tina Stambaugh, appeared before ALJ Roger L. Reynolds on May 9, 2011, for an administrative hearing. [Tr., p. 27] In a hearing decision dated May 27, 2011, ALJ Reynolds found that Montgomery was not disabled under sections 216(i), 223(d) or 1614(a)(3)(A) of the Social Security Act [Tr., p. 21]

Montgomery was thirty-six years old at the time of the ALJ's decision. [Tr., p. 30] He is a high school graduate and previously worked as a truck driver, factory worker, grill cook, appliance repairman, and security guard. [Tr., pp. 30-31, 209] His alleged disability stems from a seizure disorder and back pain. [Tr., pp. 66, 77, 88, 99] After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Montgomery suffered from a combination of severe impairments, including: "epilepsy and chronic low back pain secondary to degenerative disc disease of the lumbar spine with disc protrusions at the L4/L5 and L5/S1 levels with mild canal stenosis." [Tr., p. 14] Notwithstanding these impairments, ALJ Reynolds found that Montgomery retained the residual functional capacity ("RFC") to perform a limited range of light work. [Tr., p. 18] Additionally, he imposed the following limitations:

> no climbing of ropes, ladders or scaffolds, occasional climbing of stairs or ramps; no exposure to concentrated vibration, dust, gases, smoke, fumes, poorly ventilated spaces, temperature extremes, excess humidity, industrial hazards or unprotected heights; there should be no commercial driving, and only occasional stooping, kneeling[,] crouching or crawling.

[Tr., p. 19]

Based on the testimony of the vocational expert, the ALJ found that Montgomery could not perform past relevant work. [Tr., p. 20] However, considering the claimant's age, education, work experience, and RFC, he found that Montgomery could perform other jobs, such as factory helper, hand packer, and surveillance/security monitor. [Tr., p. 21] After determining that Montgomery could perform other work existing in significant numbers in the national economy, the ALJ concluded that Montgomery was not disabled. As a result of the ALJ's assessment, Montgomery was denied a period of disability, disability insurance benefits, and SSI. [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least

twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant

evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.**

Montgomery raises four issues in his motion for summary judgment. First, Montgomery argues that "given the uncontested and fully favorable medical evidence in this record" the ALJ should have awarded benefits. [Record No. 12-1, p. 16] He contends that the ALJ erred in his evaluation of the treating physicians' opinions, and argues that those reports were "entitled to complete deference." [*Id.*, p. 15] Second, Montgomery claims that his impairment "at least medically equal[s] Listing 1.04." [Record No. 12-1, p. 15] Third, he asserts that the ALJ erred in his RFC determination, claiming "there is no medical basis for his RFC in his claim." [Record No. 12-1, p. 16] Fourth, Montgomery claims that the ALJ erred in failing to consider the relevant portions of the VE's opinion discussing Montgomery's occupational capabilities. [*Id.*]

**A. Evaluation of Objective Medical Evidence**

Montgomery argues that substantial evidence does not support the ALJ's ruling and that the ALJ should have considered the objective medical findings of Montgomery's physicians. He generally claims that Dr. Zuleuta, Dr. Wright, Dr. Gupta, Dr. Jicha and Dr. Krishnaswamy, Montgomery's treating physicians, made findings and recommendations that support his claim for disability and that the ALJ impermissibly disregarded these findings. [Record No. 12-1, p. 14]

As noted above, the standard of review for denial of a claim for Social Security benefits examines whether the ALJ's findings are based on substantial evidence. However, this standard assumes that a claimant has made an argument and identified specific aspects of the ALJ's decision that allegedly lack support in the record. Where a claimant has not done so, the Sixth Circuit has:

> ...decline[d] to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in [his] brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." (citation and quotation marks omitted)).

In the present case, Montgomery provides a cursory argument in support of his motion which contains little more than a recitation of parts of the ALJ's decision and portions of the record. [Record No. 12-1, p. 14-15] He cites the legal standard for the review of treating physicians' opinions, but he fails to elaborate more on the issue. And Montgomery does not specify any particular treating physician's opinion that contradicted the ALJ's findings. Instead, he merely summarizes limited portions of the medical record. These are the arguments denounced by the Sixth Circuit, where "[The claimant] has failed to cite any specific opinion that the ALJ purportedly disregarded or discounted, much less suggest how such an opinion might be impermissibly inconsistent with the ALJ's findings. In the absence of any such focused challenge, we decline to broadly scrutinize any and all treating physician opinions in the record to ensure that they are properly accounted for in the ALJ's decision." *Hollon*, 447 F.3d 477, 491 (6th Cir. 2006) Because Montgomery does not specify which medical opinions the ALJ allegedly failed to consider, the Court is not required to undertake an open-ended review of the entirety of the administrative record. *See Hollon*, 447 F.3d at 491.

However, notwithstanding the general nature of Montgomery's arguments, a review of the medical evidence shows that the ALJ's decision was consistent with the treating physicians' opinions. ALJ Reynolds expressly stated that he carefully considered the entire medical record including all medical findings and observations. [Tr., p. 18] Specifically, the ALJ discussed the findings of Dr. Clemente Zulueta, who concluded that Montgomery's CT scan was normal and who treated him for low back pain and an anxiety disorder. [Tr., pp. 16, 17] Dr. Zulueta also noted that Montgomery was overweight and had ineffective levels of prescribed medication.

[*Id.*] The ALJ also considered the opinion of Dr. Gupta who diagnosed Montgomery with spondylosis with bilateral forminal stenosis at L4-S1, degenerative disc disease and facet arthopathy. [*Id.*] Dr. Gupta examined Montgomery's X-rays and stated that they showed retrolisthesis of L5 onto S1 with diminished disc height at L5/S1 [*Id.*] Next, the ALJ considered the reports of Jackson Orthopaedic Clinic which noted that Montgomery had fluid leak form the left side of the L4/5 vertebral level and disc protrusion at L4/5 and L5/S1 [Tr., p. 17]

Montgomery fails to state in what manner the ALJ's ruling is inconsistent with the assessment of his treating and consulting physicians. As stated previously, ALJ Reynolds placed several limitations on Montgomery's occupational capabilities including a prohibition on climbing ladders or scaffolds, no exposure to dust and gases and only occasional crouching or crawling. [Tr., p. 19] These limitations demonstrate a consideration of the objective medical evidence and Montgomery's physical condition.

In short, the ALJ considered the objective medical evidence and opinions of Montgomery's treating physicians in formulating his disability determination. Montgomery has failed to point to any opinions that were not considered by the ALJ. Having reviewed the record of this proceeding, the Court finds no fault with the ALJ's analysis and treatment of the relevant medical evidence.

### B. Impairment Determination

Next, Montgomery briefly alleges error in the ALJ's determination that he did not meet the criteria for a listed impairment. More specifically, he claims that his disability "would at

least medically equal Listing 1.04 of the Act." [Record No. 12-1, p. 15] Listing 1.04 covers disorders of the spine and states, in part:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Meeting the impairment requires a finding of some compression of the nerve root, limitation of motion, atrophy and sensory or reflex loss. [*Id.*]

"To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. §§ 404.1525(d), 416.925(d). When a claimant alleges that his impairment meets or equals a listed impairment he must present specific medical findings that satisfy the criteria of the particular listing. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Here, while the ALJ found that Montgomery did have some spinal damage, he determined that Montgomery did not meet the required impairment for Listing 1.04. [Tr., pp. 17-18] Montgomery also claims that his impairment equaled Listing 1.04. When a claimant alleges that his impairment equals a listing "he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). ALJ Reynolds found that Montgomery's symptoms, analyzed with the evidence, did not equal the criteria for the listed impairment.

Substantial evidence supported the ALJ's finding that Montgomery did not meet or equal the qualifications for Listing 1.04. Montgomery mentions his symptoms and ailments, but he does not identify sufficient evidence to show that he met or equaled the requirements for listing. Further, he does not specify which subsection of 1.04 his impairments allegedly met or equaled and he does not specifically identify what medical evidence the ALJ's opinions contradicted. The ALJ considered the exhibits, the testimony and references to functional ability in consultative examinations and treatment notes. [Tr., p. 18] Dr. Gupta found that Montgomery should be able to walk without difficulty, but may have trouble sitting for extended periods. [Tr., p. 17] However, this limitation was merely Dr. Gupta reciting Montgomery's complaints and not an objective medical finding. [Tr., pp. 503-505] Subjective complaints, without sufficient support from objective clinical or medical findings, are not an acceptable basis for an opinion. 20 C.F.R. § 404.1527(c)(3); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) Therefore the ALJ did not have to rely on this evidence in his ruling. Based on the record, the ALJ found Montgomery had sufficient ambulation and a lack of a need for a hand-held assistive device. The ALJ acknowledged Montgomery's ability to sustain a reasonable walking pace sufficient to carry out daily activities and travel without the need for companion assistance. ALJ Reynolds also found that the longitudinal clinical record failed to establish the severity and duration of pain at the alleged level. [Tr., p. 18]

Montgomery's daily functioning was also considered by the ALJ. If the severity of the disablement cannot be shown by objective medical evidence alone the Commissioner will consider other factors such as daily activities. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

531 (6th Cir. 1997); 20 C.F.R. § 404.1529(c)(3).   The evidence shows that Montgomery is capable of feeding, bathing and dressing himself without assistance. [Tr., p. 15] Montgomery is capable of monitoring his medications without assistance and also possesses the ability to perform household chores and some outdoor activities. [*Id.*] The ALJ properly considered this evidence and it supports his impairment determination.

Additionally, the relevant evidence demonstrates that Montgomery has been noncompliant with certain aspects of treatment. Montgomery's Dilantin levels were frequently below their therapeutic levels, suggesting that he was not taking an effective recommended dosage. [Tr., p. 16] Also, he failed to lose weight contrary to Dr. Zulueta's orders even though he was informed that it would ameliorate his symptoms, including pain. [Tr., p. 18]. Considerations of lifestyle, such as weight issues and non-compliance with medical treatment, are also appropriately considered by an ALJ when evaluating the severity of impairments. *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).[1]  Because Montgomery displayed sufficient ambulation**,** a lack of required symptoms, was able to perform ordinary daily activities, and did not follow his doctor's orders, the ALJ did not err in finding Montgomery failed to met or equal a required listing.

---

1  In *Sias*, the Sixth Circuit explained:

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege — but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.

### C. RFC

Montgomery next alleges error with ALJ Reynolds's determination of his residual functioning capabilities. He argues that "there is no medical basis for his RFC in this claim." [Record No. 12-1, p. 16] ALJ Reynolds found that Montgomery has the RFC to perform a limited range of light and sedentary work activities. [Tr., pp. 18-20]

The RFC determination is to be made solely by the ALJ. 20 C.F.R. § 404.1546(c). In making this determination the ALJ considers the medical evidence, the non-medical evidence and the claimant's credibility, not exclusively the medical evidence. The Sixth Circuit has determined that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an [RFC] finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir.2009) An ALJ's RFC finding will be upheld when it is supported by substantial evidence. *Walters*, 127 F.3d at 528 (6th Cir. 1997)

In the present case, the ALJ's RFC finding is supported by substantial evidence. ALJ Reynolds made a "careful consideration of the entire record" and "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence." [Tr., pp. 18-19] The ALJ explicitly considered the medical evaluations of physicians Dr. Zulueta, Dr. Gupta and Dr. Krishnaswamy. [Tr., pp. 16-17] Importantly, no

treating physician recommended any limitations regarding Montgomery's ability to work. A lack of physical restrictions constitutes substantial evidence for a finding of non-disability in a claim for social security disability benefits. *See Longworth v. Comm'r of Soc. Sec.*, 402 F3d 591, 596 (6th Cir. 2005).

The ALJ also considered the medical opinions of several consulting examiners. Mary Thompson, Ph.D and Dan Vandiver, Ph.D. Both consultative experts concluded that Montgomery did not have a severe mental impairment. [Tr., pp. 69-71, 91-93] State agency medical consultant Robert Brown, M.D., also analyzed the medical record and believed that Montgomery had the capacity to perform a reduced amount of medium work. [Tr., pp. 93-95] In fact, ALJ Reynolds actually lowered Montgomery's feasible work ability to limited range light work. [Tr., pp. 18-19] Again, Montgomery fails to specifically identify any medical opinion that contradicted the ALJ's RFC finding.

ALJ Reynolds also considered non-medical and credibility evidence in determining the RFC. [Tr., pp. 18-19] He considered inconsistencies regarding Montgomery's testimony and reported symptoms. For example, through 2008, Montgomery was employed as truck driver, even though Montgomery reported having monthly seizures since 2003. Yet he contradictorily reported six seizures from in 2003 to February 23, 2010. [*Id.*] Montgomery was still driving until September 11, 2010, when he was rear-ended in a motor vehicle accident. [*Id.*] Montgomery also failed to comply with his prescribed medication amount. [*Id.*]

The Sixth Circuit has developed a two-prong test to evaluate a claimant's subjective allegations:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. The ALJ found that while the medically determined impairments could cause the symptoms, Montgomery's statements as to the intensity, persistence and limiting effects of the symptoms were not credible. [Tr., p. 19] ALJ Reynolds found that, when considering the objective evidence and subjective factors, Montgomery's allegations were not credible in light of his contradictory reporting of his seizures, his history of driving while having seizures and his failure to follow his Doctor's instructions. [*Id.*]

When an ALJ determines a claimant's credibility he is entitled to deference, because the ALJ is in a unique position to "observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). In fact, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994). As noted above, ALJ Reynolds explicitly stated his rationale for rejecting Montgomery's testimony. [Tr., p. 19] He found that Montgomery's inconsistent statements and behavior undermined his credibility. The ALJ adequately considered the medical evidence, non-medical and credibility evidence when determining Montgomery's RFC and did not err when weighing the evidence of record.

### D. Vocational Expert's Testimony

Finally, Montgomery argues that, when questioned about his symptoms, VE Stambaugh answered that there would be no work for such an individual. [Record No. 12-1, p. 16] VE Stambaugh stated that if Montgomery needed frequent breaks from work due to the frequency of his seizures or naps resulting from side effects of medication all work would be precluded. [Tr., pp. 58-60] The Sixth Circuit has held that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster*, 348 F.3d at 356). The VE's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Id.*

Additionally, the ALJ is permitted to rely on the VE's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The VE's answers to these questions are substantial evidence "only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id*. VE Stambaugh indicated that Montgomery would be unable to perform his work if he required accommodation for unscheduled naps due to side effects and breaks due to seizures throughout the workday. [Tr., p. 17] Despite the VE's response to this question, it is the function of the ALJ – not the VE – to assess the credibility of a plaintiff's testimony. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). As stated previously, the ALJ found that the credibility of Montgomery's subjective complaints were questionable.

The ALJ's questions properly relied on his well-supported assessment of Montgomery's functional limitations and his RFC finding. Further, his questions involved his assessment of Montgomery's RFC and potential occupational capability. ALJ Reynolds's conclusion based on the VE's opinions in light of the RFC finding are valid. Thus, the VE's testimony constitutes substantial evidence supporting the ALJ's finding that Montgomery is not disabled and could perform work that exists in the national economy.

### IV.

Substantial evidence supports the ALJ's decision that Plaintiff Montgomery is not disabled under the relevant provisions of the Social Security Act. Additionally, the Court rejects Montgomery's arguments that the ALJ erred in evaluating the relevant medical evidence and testimony presented for consideration in connection with his claims. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Anthony Ray Montgomery's Motion for Summary Judgment [Record No. 12] is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

3. The decision of Administrative Law Judge Roger L. Reynolds is **AFFIRMED**.

This 16th day of September, 2013.



**Signed By:**
*Danny C. Reeves* DCR
**United States District Judge**